Good morning your honors. May it please the court. Attorney Robert Jacobs on behalf of the petitioner. This case comes down to two primary boil-down issues. One is that the realistic probability test in Duenas Alvarez was satisfied here such that the crime of indecent exposure under California statute 314-1 is not categorically a crime of moral turpitude. And the second primary issue is that even if it was determined by this court to be categorically a crime of moral turpitude, it should not retroactively apply to the petitioner here who entered a plea back in 2002 when case law under California courts and the Board of Immigration Appeals clearly did not render that California statute categorically a crime of involving moral turpitude. And going back to the realistic probability test, the California statute historically has been more broad than the generic federal definition of a crime of moral turpitude which requires for a non-fraud offense, it requires an intent to harm, actual harm, or a protected class. And the indecent exposure statute under California law does not, or encompasses, people have been convicted for that particular offense for offenses that are more broad than that general requirement. For example, the People v. Conway case from 1979 rendered that nude dancing in a bar was held to be a valid conviction under the indecent exposure law. Well here, let's see if we can, if I understand this correctly. Since Nunez, the decision of the Ninth Circuit, the BIA has come up with a description and definition of and that is Cortez Medina, correct? Yes you are. And so don't we look now to Cortez Medina, isn't it our obligation to do so under brand X, and determine whether that's a reasonable interpretation. Well that's not where we are in terms of the posture of this case. First of all, although not raising the brief, Chevron deference probably should not have been accorded here. I guess that's why I want to ask, why not? Because the decision by the board didn't properly analyze the California state statutes. Why not? Because it merely attempted to distinguish the settled cases that demonstrated that you can be convicted of a crime under California law when you're not necessarily engaging in actions that involve moral turpitude. Well, it seems like Cortez Medina looked at three BIA cases, albeit they're old cases to derive its definition, but it included that lewd intent was the central factor that brought indecent exposure within the definition of the crime of moral turpitude. Why was that not reasonable? Because the court should have looked more specifically to the California statutes. Although the California statute does require lewd intent, it is clear that it had been applied in situations in the past to situations in which it's not clearly lewd action. Like nude dancing? Yes, Your Honor. But here's the problem. We're told by Brand X and by Chevron, well start off, but we're told that the term crime involving moral turpitude is unequivocally ambiguous. That's Ninth Circuit Court, right? That's correct. When it's unambiguously ambiguous, we're told by the Supreme Court that Chevron deference should be applied, correct? Yes, Your Honor. All right. Now what you're saying is that the Chevron deference that would normally be applied here should not be applied because the BIA didn't follow California law. But does that make it unreasonable? Isn't there a way of BIA determination as saying, well some people would say think it this way, some people would think it's this way. In other words, error doesn't make it unreasonable, right? Yes, Your Honor. Well, thank you very much. So then Brand X applies? Perhaps. And Cordes Medina applies, unless you have some argument on the retroactivity. Which I do. Let's go to that. Okay. The applicant here, the petitioner in this case, entered a plea in 2002 and at the time the indecent exposure statute was more broad than the crime of moral turpitude interpretation by the board and prior case law. So he clearly reasonably relied on the that fact. And when we look at the retroactivity, well and also the the court in this case and in many prior cases did not challenge the petitioner's and published. And so there was no other intervening cases that that would have alerted him to the possibility that this would be categorically a crime of moral turpitude. Then we look to the Montgomery Ward factors and see if they apply more to toward the petitioner's favor as opposed to applying it whether this was a case of first impression. And we argue that it was not a case of first impression, that it was well established that the board precedent was that it's not categorically a crime of moral turpitude. The second factor is whether there was an abrupt departure from law or whether the board decision was merely to clear a void in the law. We argue that it was a when you're analyzing whether convictions a crime of moral turpitude requires intent to harm, actual harm, or a protected class. And the California statute 314 for indecent exposure didn't require those elements. Third was the reliance issue which which I had previously mentioned. The petitioner did have reasonable reliance. And fourth was whether it's a substantial burden to the decision to him retroactively. And clearly it was is a substantial burden because its relief was pretermitted and he's been ordered deported. And finally whether there we argue there's the fifth standard there's no clear interest in departing from the years of the precedential case law and departing from the crime of moral turpitude definition in that you requires actual infliction of harm or a protected class to a victim. Thank you. And I would like to reserve some time for questions. Good morning, Your Honors. I'm Erica Miles for the Attorney General. I just wanted to quickly recap the issues that are before the court and in case you have any questions. But you know first and implies the board was well within its authority to interpret the crime involving moral turpitude term under the INA. Was it within its authority? I guess my question is was it was it reasonably derived? It was reasonably derived. It is rooted in in it is directly consistent with excuse me the broader definition for crime involving moral turpitude which is a requirement of culpable mental state and reprehensible conduct. Additionally it's rooted in precedent both board and this court's precedent and the board explained why and it is a reasonable interpretation. From what I can tell they looked at three and only three BIA cases and one was from the 40s and then the other one was either the 50s and then the other one was from 1960 to derive its definition. And one of them was a prostitution case. I just wonder if that's reasonable to look back that many years to determine whether or not that lewd intent you know brought as a central was a central factor that brought indecent exposure within the cases under current standards I think would not necessarily be considered lewd. I looking at the board also looked at other indecent exposure situations as well from the past in addition to the prostitution. So in the prostitution or prostitution related context it did note that lewd was the linchpin as to why an moral turpitude world and it looked at other indecent exposure cases and found that those cases did not constitute crimes involving moral turpitude because while knowledge or intent to expose one's parts in public was a requirement it did not have the further intent of being sexually motivated or of being lewd of the intent was not that others would see let alone that it would be to arouse or gratify. So the board did a comparison of prior indecent exposure cases with the current statute at hand as an example. And additionally, a review of the BIA and Ninth Circuit precedent if you look at it reveals that non-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm upon someone or an action that affects a protected class of victim. Is that what is represented in the new Cortez Medina? Because it seems like it's saying in Cortez Medina that lewd intent brings the offense of indecent exposure within the definition of CIMT and doesn't really address actual injury upon someone or a protected class. Sure. The board over the years in addressing non-fraud offenses has case by case and time by time come up with definitions such as this beyond the broad definition for CIMT. The board has developed for certain types of offenses such as theft offenses or DUI offenses, generic elements that must be met. So a generic definition for classes of crimes as well. And DUI is a great example here because the board's decision here is consistent with its DUI precedent which this court's en banc court has deferred to. In the DUI context, intent was the linchpin. That was the key to why a certain DUI offense versus another DUI offense was or was not a crime involving moral turpitude. An intent to harm or actual harm or a protected class of victim was not at all, neither three of those were a consideration in the board's determination because that is not a requirement under the board's statute. The requirement is more the intent of the actor or the defendant and looking at what their conduct and what their state of mind was in committing the offense. So one of the offenses that was discussed, I think it was in Nunez and I'm just curious under Cortez Medina how it would be treated, was I think it was a reference to like maybe a 12-year-old, as a prank I guess, mooning somebody, maybe his classmates. Actually, those are two different cases. There is a mooning case and then there's a 12-year-old. Just combine that. Mooning would not meet, a mooning child would not have been convicted under this statute. Genitalia must always be involved. And currently it wouldn't be. So in the mooning case which the California courts looked at and said, sure, it's bad judgment. Sure, it's a tasteless prank. But it was mooning and it did not rise to the level of indecent exposure because there was no showing of an actual sexual motivation behind the mooning. That it was just an intent to expose buttocks. But genitalia were not even involved in the mooning incident. In the incident involving the 12-year-old in the Lionel case, so the mooning was Dallas. In the Lionel case with the 12-year-old there was exposure of genitalia and the scenario was that the boy waited and targeted the two girls and wanted to make sure that they saw his exposure and it was to either arouse or gratify or sexually affront. So he was convicted under the indecent exposure statute. So that's the difference there. But California, you brought up the point here with mooning and pranks, whether or not they rise to the level of under this reasonable realistic probability test, mooning would never qualify. Nobody would ever be convicted under 314 because you must expose genitalia, it must be intentional exposure, and it must be with the intent to either sexually gratify, sexually arouse, or sexually affront somebody. And the board did explain that. Could you please address your friend's argument on retroactivity? Yes, I will. Mr. Betancos was convicted in 2002. That is the relevant time period that this retroactivity question needs to be examined through, the time he pled guilty. And in 2002 there was no board precedent at the time specific to indecent exposure cases other than where they found just knowing exposure wasn't enough or prostitution type cases with lewd behavior, but there was nothing specifically where the board would or would not determine. The board's existing definition for CIMT generally, crime involving moral turpitude generally, was a culpable mental state and reprehensible conduct. It has to be sort of a base, vile, or depraved type of offense. That was the state of the law in 2002. Mr. Nunez, in the case that this court eventually decided in 2010, was convicted in 2003. And the board in a contemporaneous time period, the board in 2003 found that Mr. Nunez was convicted of a crime involving moral turpitude. And all of this background I say to give you the picture that there is no abrupt departure here from the board's application or definition of crime involving moral turpitude. There's no reason that Mr. Betancos could rely in 2002 when he either pled or was convicted of this offense, could rely that he would not be deemed to have been convicted of a crime involving moral turpitude and removable for that. This is quite different than the scenario, the court's most recent case in Garcia Martinez, which found impermissible retroactive application. In that case, the board had a departure of 70 years of precedent regarding examining theft as a crime involving moral turpitude. Here, there was no change. There was no precedent. There's no reason he could even rely on the fact that he wouldn't be removable on this very finding. Why is the 2002 time period relevant? I guess I want to understand what you're saying on that. Because when the court looks at the time, reliance is the key here. So when somebody either pleads or is convicted at that time... But up until that, I mean, Nunez was the law, correct? Not in 2002 when he was convicted. But when he made his decisions regarding how to proceed in the immigration context and how to argue his immigration case in 2012, it certainly was. In 2012 it was, yes. So I'm curious as to why you're pointing to 2002 versus 2012 when he's in the midst of all of his decisions regarding... So he had to make some strategy, correct? I apologize for interrupting. He did, yes. But his only strategy was to say, I wasn't convicted of a crime involving moral turpitude. I don't think he had... He could rely on that then, but there's no... The outcome doesn't change if he didn't argue it. Sure it does. What do you mean the outcome doesn't change? I mean, he gets relief potentially if he says it really didn't fall within the... And he did argue it. He made every argument that he could at the time. My point was, if he was wrong, he still had to make that argument and try and persuade, which he did. He did everything he could, given the state of the law. But if the BIA decision had been in place, he might have then decided to go a different route. We don't really know. Well, we know there's no other relief available to him, so there wasn't other than for this cancellation... Voluntary departure. Could he have pursued that if he had known that he was going to lose on the moral turpitude? He could have. But we do have the state of the law, just to be clear, just to go back to Brand X and Chevron deference. At that time, the board had found in a non-precedential decision that this very offense is, in fact, a crime involving moral turpitude. This court then, in 2010, decided to create its own generic definition of an ambiguous term to which the board would be owed deference had it had a definition. And the board has since had the possibility of the board being able to come back with a definition in the first instance, because they're the agency, they have the authority to come back and further clarify and say, we see we need to clarify here that for indecent exposure cases. And the board then laid out a generic definition for the class of indecent exposure. And it has done that in the past. It wasn't the first time. It's done it for theft offenses. It's done it for DUI. It's done it for other types of cases. Pardon me for interrupting you, but is your position that the law wasn't substantially different between 2002 and after Cortez Medina when he pleaded guilty? Is that your position? He pled guilty in 2002. So the law was in flux, I would say. But the board had been applying, it had been finding that this offense is a crime involving moral turpitude. In 2002. In 2002, I don't know that there is a specific case as to this, but in 2003 there was because it was Mr. Nunes himself. That was after he pleaded. After he pleaded. But the definition, the broader definition, because back then we did not have a generic definition for indecent exposure. So the state of the law at 2002 was the general definition for crime involving moral turpitude, which is a culpable mental state and reprehensible conduct. Without any intent to injure. That has never been the board's definition. The board has never required an intent to injure, intent to harm, or a protected class of victim as a blanket definitional element. Never. It has done so on sort of a weighing or sliding scale for specific classes of crime, but not as its general definition or its sort of default definition, if you will. But Nunes required an intent to harm. Nunes did. In 2010, that's when it was first announced by some authority, which was this court, that intent to harm or actual harm or protected class of victim was going to be an element for sexual offenses. So that was the generic definition applied in Nunes. And it's important because here, there's another step here we haven't talked about, is an application of the California statute to that definition. And the Nunes court looked at the California statute through the lens of the definition that it carved out, requiring those harm or protected class of victim elements. So now when it's back before the board, the board created its definition under its brand X authority for indecent exposure, which is willful exposure of private parts with a lewd intent. And through that lens, the board examined the California statute and the board's interpretation and the board's examination of the statute to find that it meets its generic definition is reasonable and within the bounds of the law. And as applied in Mr. Betancourt's case, it's not impermissibly retroactive. Thank you very much. Thank you. First, regarding the retroactivity issue, the petitioner would have had other, not necessarily direct relief, but other strategic possibilities in the form of, as mentioned, voluntary departure, but also post-conviction relief in California under Penal Code Section 1016.5 and also 1473.7, which are different motions to withdraw the pleas. Had he known going into that merits hearing in court that this was going to be the finding of the court without a continuance, he would have had the opportunity to... Well, we have lots of cases saying that a petition that is granted to withdraw the petition in the state court has no effect on this conviction for federal purposes. Not for expungements, but under the two statutes mentioned, they can be withdrawn and vacated as a legal invalidity. And that would have been the motion. It's separate from an expungement. Secondly, I want to state, where does this end? The board here is basically saying they're invoking Chevron and Brand X to directly contradict precedent case from the Ninth Circuit. That's exactly what happened in Brand X. That's correct, Your Honor. But here they're imposing this realistic probability test in which there were prior cases. And so by the fact that there were prior cases is evidence that it is a realistic probability that there could be a conviction under California that's outside of the definition of moral turpitude. And here they gave a five-year window and said, basically, from the time that Nunez was brought in, which was published in 2010, they said, where are the new California published cases or unpublished cases on this issue? And the board said that in 2015. So they basically gave a five-year window and said, if you can't show any new cases that there's a conviction in California under the indecent exposure statute that's outside of the moral turpitude definition, then you're going to lose. Then we're going to find that there's not a realistic possibility. That's ludicrous. They gave a five-year window. Now, basically, if the court agrees with their decision, that could set a precedent for the board undermining the circuit courts throughout the country and giving such a short window of time to come up with a new case. This is a conviction that it was a misdemeanor with a maximum six-month sentence. So it's not necessarily the type of conviction that people are going to be running to the appeals courts to file appeals on. So the fact that there's no published cases should not be held against the petitioner. Well, if it only carried a maximum six-month sentence, then it shouldn't be a crime involving moral turpitude anyway under Nunez, right? I'm not sure if the sentence maximum has a direct impact on a crime of moral turpitude. Pardon me. I'm taking you past your time. Thank you very much.
judges: Bea, Murguia, Bastian